11th Court of Appeals
Eastland, Texas
Opinion
 
Derrick Polly
            Appellant
Vs.                  No. 11-03-00072-CR -- Appeal from Dawson County
State of Texas
            Appellee
 
            Derrick Polly was indicted on two counts of assault against a public servant. The jury
convicted appellant in count one of assaulting Amy Marie King and in count two of assaulting
Pepper Laray Rickman. The jury found the enhancement paragraph to be true and assessed
appellant’s punishment at 20 years confinement and a $10,000 fine for each count. The sentences
are to run consecutively. We affirm.
            In his third point of error, appellant argues that the evidence is factually insufficient to
support his conviction. In order to determine if the evidence is factually sufficient, we must review
all of the evidence in a neutral light and determine whether the evidence supporting guilt is so weak
that the verdict is clearly wrong and manifestly unjust or whether the evidence contrary to the verdict
is so strong that the beyond-a-reasonable-doubt burden of proof could not have been met. Zuniga
v. State, No. 539-02, 2004 WL 840786 (Tex.Cr.App. April 21, 2004); Ross v. State, 133 S.W.3d 618
(Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Cain v. State, 958
S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). We review
the fact finder’s weighing of the evidence and cannot substitute our judgment for that of the fact
finder. Cain v. State, supra; Clewis v. State, supra. Due deference must be given to the jury’s
determination, particularly concerning the weight and credibility of the evidence. Johnson v. State,
23 S.W.3d 1 (Tex.Cr.App.2000); Jones v. State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert. den’d,
522 U.S. 832 (1997). This court has the authority to disagree with the fact finder’s determination
“only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest
injustice.” Johnson v. State, supra at 9.
            Officer Rickman testified at trial that on December 31, 2000, she was working as a security
officer at the Preston Smith Unit of the Texas Department of Criminal Justice. Officer Rickman
stated that on that night appellant was not in his assigned wing of the prison. Officer Rickman
instructed appellant to return to his wing. Officer Rickman stated that appellant complied but that
he “got a little hostile.” Officer Rickman said that, later that night, when she was closing the doors
on the cells, appellant pushed his door back open. Appellant and Officer Rickman then struggled
over trying to close the door. Officer Rickman stated that appellant was “belligerent” and that he
started “cussing.” Officer Rickman instructed appellant to go to the “D Space,” and she asked
Sergeant King for assistance. 
            Officer Rickman testified that, when appellant got into the “D Space,” he became belligerent
again. Sergeant King instructed appellant to face the wall, and she told Officer Rickman to put
handcuffs on appellant. Officer Rickman put appellant’s left hand in the handcuff; but, when she
tried to put his right hand in, he jerked away from her. Officer Rickman testified that appellant hit
her in the head, back, and arms. Officer Rickman looked up and saw appellant with his hands
around Sergeant King’s neck. Officer Rickman tried to get appellant away from Sergeant King, and
the two officers continued to struggle with appellant. Officer Rickman stated that they all three fell
to the ground and that the officers were finally able to get appellant’s right hand into the handcuff. 
Other officers arrived at that time to assist in the disturbance. Officer Rickman required surgery to
repair a ligament in her knee which tore as a result of the altercation. 
            Sergeant King testified at trial that she went with Officer Rickman to talk to appellant
because Officer Rickman was having trouble with appellant. As they approached appellant, he was
in an “assaultive stance.” Sergeant King stated that appellant “just stood there.” Because of
appellant’s “assaultive stance,” Sergeant King decided to place appellant in handcuffs for everyone’s
safety. Sergeant King gave the handcuffs to Officer Rickman and instructed appellant to face the
wall. Sergeant King testified that Officer Rickman placed the left handcuff on appellant and that,
when she attempted to put on the right handcuff, appellant punched her. Sergeant King tried to pull
appellant off of Officer Rickman. Sergeant King stated that appellant then began hitting her. 
Sergeant King testified that they all fell to the ground and that appellant began choking her. Officer
Rickman was able to get appellant to let go of Sergeant King’s neck, and they eventually got
appellant restrained in handcuffs. 
            Appellant called three witnesses to the incident to testify on his behalf. Two of the witnesses
testified that they did not see appellant choke Sergeant King or hit either officer. The other witness
said that he did not see appellant choke Sergeant King but that he did see appellant hit Officer
Rickman. The witnesses all testified that Officer Rickman pushed appellant when trying to put the
handcuffs on him. 
            Appellant testified on his own behalf at trial. Appellant stated that he was in the “day room”
watching television when Officer Rickman came in shouting about the day room rules. Appellant
got up to return to his cell. Appellant said that, as Officer Rickman was about to close the door on
his cell, he noticed that he had left his cup in the day room. Appellant said that he held on to the
door so that he could go get his cup. Officer Rickman tried to close the door a second time. 
Appellant told her that he needed to get his cup, and he held on to the door again. Appellant said that
Officer Rickman told him to go to the “D Space.” 
            Appellant testified that he went to the “D Space” and sat down. One of the officers told
appellant to stand up, and he complied. Appellant said that Officer Rickman told him to put his
hands behind his back and then started giving him “admonishments about the rules.” Appellant said
that he asked Officer Rickman to “back up a little bit.” After telling appellant to turn and face the
wall, Officer Rickman attempted to put handcuffs on appellant. After she placed appellant’s left
hand in the handcuff, appellant asked why she was restraining him. Officer Rickman responded that
appellant had threatened her. Appellant told Officer Rickman that he did not threaten her. Appellant
testified that Officer Rickman slammed him into the wall. Appellant said that Sergeant King hit him
in the back with her walkie-talkie. Appellant testified that he did not punch or choke either of the
officers. Appellant testified that he struggled and wrestled with the officers, but that he was de-fending himself. 
            Appellant argues that the evidence is factually insufficient to support his conviction because
of the inconsistencies in the testimony. The jury heard testimony from both Sergeant King and
Officer Rickman that appellant hit them. The jury is the sole judge of the credibility of the witnesses
and the weight to be given their testimony, and it is also the exclusive province of the jury to
reconcile conflicts in the evidence. TEX. CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon
1979 & 1981); Wesbrook v. State, 29 S.W.3d 103 (Tex.Cr.App.2000), cert. den’d, 532 U.S. 944
(2001). After viewing all of the evidence in a neutral light, we do not find that the evidence
supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or that the
evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt burden of proof
could not have been met. Zuniga v. State, supra; Ross v. State, supra. Appellant’s third point of
error is overruled.
            In his first and second points of error, appellant contends that he was denied effective
assistance of counsel when the trial court failed to appoint new counsel after learning of a conflict
between appellant and his trial counsel. In order to determine whether appellant’s trial counsel
rendered ineffective assistance at trial, we must first determine whether appellant has shown that
counsel’s representation fell below an objective standard of reasonableness and, if so, then determine
whether there is a reasonable probability that the result would have been different but for counsel’s
errors. Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 988 S.W.2d 770 (Tex.
Cr.App.1999). We must indulge a strong presumption that counsel’s conduct fell within the wide
range of reasonable professional assistance; and appellant must overcome the presumption that,
under the circumstances, the challenged action might be considered sound trial strategy. Stafford
v. State, 813 S.W.2d 503, 508-09 (Tex.Cr.App.1991).
            Appellant’s argument that he received ineffective assistance of counsel is based upon his trial
counsel informing the court that appellant would not accept a plea bargain offered by the State. The
record reflects that a pretrial hearing was held on the day of trial, December 10, 2002. At the hearing
appellant’s trial counsel informed the trial court that a few days earlier appellant had agreed to accept
a plea offer from the State. Trial counsel stated that on December 10, appellant asked his trial
counsel “various questions” and trial counsel answered those questions. Trial counsel informed the
court that appellant “refuse[d] to proceed with a plea bargain that [trial counsel] thought we had
entered.” Trial counsel further stated that appellant was aware of the consequences of going to trial. 
            At the December 10 hearing, appellant told the court that his trial counsel was not
“responsive” to his questions. Appellant stated that he did not believe his trial counsel was prepared
for trial. Appellant said that he told his trial counsel he would accept the State’s plea bargain offer,
but that he wanted his trial counsel to “present an offer allowing [appellant] to preserve [his] right
to appeal pre-trial issues.” Appellant stated that he had not refused the plea bargain offer. The State
indicated that it would not accept a conditional plea bargain agreement. 
            Appellant told the trial court that he and his trial counsel had a conflict. The trial court
informed appellant that another attorney would not be appointed for him. Appellant’s trial counsel
stated that he had thoroughly reviewed the case and was ready for trial. Appellant stated that he
would accept the plea bargain because he could not go to trial with his trial counsel. Appellant said
that he could not “put [his] life on the line.” The State informed the trial court that the plea bargain
was no longer available. Appellant asked that his trial counsel withdraw from the case. Trial
counsel stated that he did not feel there was a conflict between himself and appellant. Trial counsel
stated that the only potential conflict was appellant’s reconsideration of the plea offer and that the
State had since withdrawn the offer. 
            A criminal defendant is not entitled to appointed counsel of choice. Dunn v. State, 819
S.W.2d 510, 520 (Tex.Cr.App.1991), cert. den’d, 506 U.S. 834 (1992). Even though a criminal
defendant is entitled to effective assistance of counsel, this constitutional protection cannot be used
to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.
Dunn v. State, supra. A criminal defendant may not wait until the day of trial to demand different
counsel or to request that counsel be dismissed so the defendant may retain other counsel. Robles
v. State, 577 S.W.2d 699, 704 (Tex.Cr.App.1979). The record shows that appellant was equivocal
in his acceptance of the State’s plea bargain agreement. As a result of appellant’s actions, the State
withdrew its offer. The record further shows that appellant’s trial counsel conducted cross-examination of the State’s witnesses and called witnesses on appellant’s behalf. The record does not
support appellant’s argument that his trial counsel was unprepared to proceed to trial. Appellant has
not shown that the trial court erred in refusing to appoint new counsel or that he received ineffective
assistance of counsel. Appellant’s first and second points of error are overruled.
            The judgment of the trial court is affirmed.
 
                                                                                                W. G. ARNOT, III
                                                                                                CHIEF JUSTICE
September 9, 2004
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.